## Makdad v. Altoona Plate Glass and Beveling Company

*John M. Snyder*, for plaintiff.
*Sheriff, Lindsay, Weis & Hutchison*, for defendant.

PATTERSON, P. J., July 26, 1932.—This is an appeal from the award of the compensation board. On September 22, 1930, the plaintiff, in the course of his employment, received a severe injury resulting in almost total loss of one of his hands. The adjuster for the insurance carrier and the plaintiff entered into a compensation agreement based on the plaintiff's weekly wage of $35. About one year later the insurance carrier filed a petition for review, setting forth that the wages at $35 were not correct and that the plaintiff received only $15 per week, and applied for a readjustment of the compensation agreement. The compensation board decided in favor of the carrier and fixed wages at $15 per week, from which award this appeal was taken. The defendant is the Altoona Plate Glass and Beveling Company, owned and operated by George Makdad, father of Albert Makdad, the claimant. It is admitted by the compensation board and the referee in their findings that the relation of these parties was not that of parent and child but that of employer and employe.

Several witnesses testified at the hearing that at the time of the hiring a contract was entered into between the claimant and the defendant providing that the claimant should receive $15 per week in cash and also boarding, lodging, clothing and necessaries, the value of which was fixed by the parties at $20 per week, and that this contract was in effect and was carried out by both parties from the time it was agreed to to the time of the accident.

The referee found as a fact "that about June 10, 1931, an employe of the defendant named Namey was discharged and a contract of employment was made with the claimant to take the place of the discharged employe. The wage of the claimant was to be $15 per week in cash, together with board, lodging and clothing, which was estimated to be worth $20 per week." The referee, believing that $20 per week was excessive for board, lodging, etc., applied the rule laid down in the Act of June 26, 1919, P. L. 642, Sec. 3, which fixes the rate of boarding and lodging at $1 a day for the purpose of computing wages where there is no contract. The referee, on this basis, allowed $15 in cash per week and $7 for board and lodging, or a total of $22 per week upon which he directed compensation to be awarded. The compensation board disagreed with this conclusion of the referee and decided that since the books kept by the defendant

company showed the sum of $15 cash paid as the weekly wage, that was the only wage due claimant at the time of the accident and that the testimony concerning the allowance for boarding, lodging and necessaries should be disregarded.

Since the common pleas courts are permitted to review compensation cases for the purpose of determining whether the conclusions of law by the compensation board are properly supported by sufficient competent testimony, we concern ourselves with but one question, to wit: Is the compensation board's conclusion of law supported by competent testimony? The conclusion is: "From the foregoing findings of fact it is concluded as a matter of law that the defendant is entitled to a correction of the agreement so that the weekly wage of the employe shall be stated to be $15 instead of $35 a week, and that said defendant is entitled to credit for overpayments already made."

This court cannot agree with the reasoning of the compensation board in eliminating part of the wages established by the clear and unquestioned testimony of the witnesses when it said:

"If the boy was in fact entitled to $35 a week and as it was the custom to keep a payroll record, it would seem that ordinary business judgment would have dictated that the entire $35 wage be put on record, no matter in what manner or form it was disbursed, if for no other purpose than to present a constant and correct picture of the business and for the making of income tax returns.

"As the hearing upon the petition failed to produce any evidence that more than $15 a week was paid to the boy out of the plant's treasury, the board believes that must be adjudged to represent his weekly wage."

The fact-finding board in considering this case need not concern itself with "the ordinary business judgment" and the completeness of the bookkeeping system used in the business of the father of claimant so as to show "a constant and correct picture of the business and for the making of income tax returns." For such purposes the payroll record might have included items other than the record of cash paid out. But a proper conclusion does not necessarily depend upon a perfect system of bookkeeping but exclusively upon the terms of the contract for hiring entered into by the parties, established and in existence at the time of the accident.

We think that said conclusion is erroneous and not supported by the testimony. The fact that the business cash book showed $15 in cash paid to the claimant weekly does not warrant the conclusion that that was the full amount of the wages, when the uncontradicted evidence is to the effect that the weekly wage also included boarding, lodging, clothing and incidental expenses to the amount of $20 per week. The testimony of those witnesses was unimpeached and could not be disregarded by the fact-finding board any more than the cash allowance as shown by the books of the firm could have been disregarded in arriving at a proper conclusion on the question of the amount of earnings. The referee and the board admit that the wage in question is based on a contract, and in arriving at a proper legal conclusion it is necessary to determine from the evidence what that contract was. The board could not arbitrarily say that the oral testimony showed that the $20 per week allowed for boarding, clothing, etc., was the full amount of the wages and that the $15 cash allowed was not part of the weekly wage. Neither can it say that the $15 cash per week is the full wage and that no part of the $20 per week for clothing, etc., is to be allowed. Such a conclusion would be erroneous and illegal. The terms of this contract, in our judgment, were clearly proven and the wages established at $35 per week.

Where the wages are stipulated in a contract, such as in the present case, and part of the same is paid in boarding, lodging, etc., and part in cash and that contract is established by sufficient competent evidence, there is no discretion in the compensation board to alter or modify the same.

The compensation board undertakes to establish a rule of law never before heard of in compensation cases. The contract between the parties is not questioned. Neither is it denied that it was carried out, but the board defeats the admitted contract because the employer did not keep the right kind of books. Such a conclusion would be disastrous to meritorious applications for compensation. Few cases could be successfully prosecuted if the board in its conclusions of law is to be governed by the standard of bookkeeping maintained by the employers. In many instances no books are kept and in many more, imperfect books are the only ones available.

In Kelly v. Silverman, 74 Pa. Superior Ct. 298, a case very similar to the one under consideration, the Superior Court holds, by a per curiam opinion, affirming the court below:

"The appeal is by the defendant as to the amount of compensation allowed the claimant. The claimant's wages were ten dollars a week and room and board. The referee has awarded compensation as upon a wage of twenty dollars per week, counting the room and board at ten dollars a week, and the only question in the case is whether or not there is evidence from which the referee could find that the money value of the board and room had been fixed and agreed upon at the time of the hiring. The evidence as to what was said at the time of the hiring is somewhat contradictory, but in one part of the testimony of the man who actually hired the claimant it appears that the claimant was told, at the time he was employed, that the room and board would amount to ten dollars. We think this is a sufficient fixing of the value within the statute, and the appeal is therefore dismissed."

It will be noted that in the foregoing opinion the evidence was contradictory as to the oral part of the agreement of hiring relating to the amount to be allowed for boarding, etc., while in the present case the testimony on this question is undisputed.

In Caruso v. Com., 99 Pa. Superior Ct. 238, 242, in an opinion by Judge Gawthrop, it is held:

"It is true that facts found by the board which are supported by competent evidence are as binding on the court below as would be the verdict of a jury (Sgattone v. Mulholland & Gotwals, Inc., 290 Pa. 341). But in our view that rule has no application here, because, after a careful review of the evidence, we are of one mind that it wholly fails to support the finding of the board that the deceased did not stand in the position of an employee of the Department of Forests and Waters at the time he was injured, and that the only rational conclusion to be drawn from it is that at that time he was temporarily that department's employee and subject to its control and direction in respect to the work he was doing. The question whether there was any competent evidence to sustain the finding of the board that the deceased did not bear to the department the relation of a servant at the time he was injured is one of law for the court below, and is now here for review."

And as was said in the foregoing opinion, "the only rational conclusion to be drawn from" the evidence in this case is that at the time of the accident claimant was working under an agreement clearly proven which allowed him a wage in cash, boarding, clothing and necessaries in the amount of $35 per week. In our judgment, no other legal conclusion can be reached under the testimony in this case and the record will be returned to the compensation board for further

consideration, as directed by the Superior Court in Caruso v. Com., supra, in the following language: "But when the evidence was sufficient to support the claim and the common pleas has found it necessary to sustain exceptions to findings of fact by the board, the statute requires a remission of the record."

The exceptions to the award of the compensation board are sustained, the award is, therefore, reversed, and the record is hereby remitted to the Workmen's Compensation Board for further hearing and determination.

From Robert W. Smith, Hollidaysburg, Pa.